WILLIAM W. CORDINGLEY, PROSECUTOR, v. THE BOR-OUGH OF MENDHAM, LEO ROBINSON, CLERK OF THE BOROUGH OF MENDHAM; CHARLES H. DAY, FRANK M. GROENDYKE AND BERKELEY LUMBER AND SUP-PLY COMPANY, A NEW JERSEY CORPORATION, RE-SPONDENTS.

Submitted October term, 1933—Decided March 1, 1934.

Before BROGAN, CHIEF JUSTICE, and Justices TRENCHARD and HEHER.

For the prosecutor, *Martin R. O'Keefe.*

For the respondents, *David F. Barkman (Harold A. Price,* of counsel).

PER CURIAM.

A writ of *certiorari* was allowed in this case to review the action of the governing body of the borough of Mendham in executing certain leases, namely (a) lease made between the borough of Mendham and Groendyke and Day, on October 1st, 1930, in which the borough is tenant; (b) lease made between the borough and Groendyke, dated June 6th, 1933, in which the borough is likewise tenant; (c) lease of borough property made to Berkeley Lumber and Supply Company, dated May 8th, 1933.

(a) On October 1st, 1930, the borough of Mendham executed a lease by which it rented from Messrs. Groendyke and Day the first floor of a cement block building located at West Main street, Mendham borough, Morris county, for the term of five years at a rental of $100 a month. The property was used by the borough to house its fire department. The use and occupancy of the premises by the town continued and the rent was paid until the month of June, 1933, at which time the prosecutor of the writ, a citizen and taxpayer, attacked this and the two other leases, alleging that the municipal action thereon was illegal and void.

The ground for attacking the first lease is that Mr. Day, one of the owners of the premises in question, was and had been since 1923, the mayor of the borough. He and Mr. Groendyke had purchased the property in question in 1927. The chief ground on which this lease is challenged is based on the thirty-second section of the Crimes act which provides, generally, that any member of any governing body who shall directly or indirectly be interested in any contract in which the municipality is concerned, the expense or consideration of which is paid by the board, &c., of which such member is a part, shall be guilty of a misdemeanor. *Cf. Pamph. L.* 1898, *p.* 803; as amended, *Pamph. L.* 1901, *p.* 393, and *Pamph. L.* 1907, *p.* 292, &c.

On behalf of the respondent Charles A. Day, mayor of the borough, it is urged that the prosecutor is in laches in his attack upon this lease.

It appears from the record that the borough attorney, on being asked for his advice in this matter, determined in June, 1933, that the lease was invalid and thereupon the lessors, Groendyke and Day, surrendered the lease to the borough council. From the record before us, it is evident that Mr. Day made no concealment of the fact that since 1927, he was part owner of these premises; that in 1930, he and his co-partners leased the premises to the borough and that from the date of the lease the fire department of the municipality used the premises for its purposes and that rent was paid for the same. This action on the part of the borough, in

making the lease, was permitted to go unchallenged for almost three years. It was incumbent upon the prosecutor, if he desired to review this municipal action, to have done so promptly. *Carr* v. *Merchantville*, 102 *N. J. L.* 553, 558; 142 *Atl. Rep.* 1. Under the facts and circumstances here disclosed, we do not think he acted with diligence, but that he is guilty of laches.

Again we take into consideration the fact that the lessors, Groendyke and Day, and the governing body, upon receiving advice from the borough attorney on or about June 2d, 1933, that the council "had not the power to make the lease in question" promptly and mutually surrendered the lease and that this surrender was consummated before the writ in the case was allowed or sought. This surrender having been effectuated, the attack on this lease becomes an academic question.

(b) Thereafter it appears that Mr. Day sold out his interest in the property to Mr. Groendyke and received a $3,000 second mortgage for his interest and equity in the land and building; that at the meeting of the borough council, held on June 5th, 1933, the first lease having been surrendered, the municipal body leased from Mr. Groendyke the same premises for the continued use and occupancy of the fire department. The resolution in the matter of this second lease was unanimously adopted. It provided for a term of two years at the same rental, namely $100 a month, and this lease is challenged in the writ.

The prosecutor contends that this lease should be voided because Mr. Day, a member of the governing body, had an interest, as second mortgagee, in the property in question. The provisions of the thirty-second section of the Crimes act, *supra*, are invoked as authority for setting it aside. Much could be said by way of argument in favor of the proposition that this section of the Crimes act applies merely to the conduct of Mr. Day and has no bearing upon the legality of the lease under attack. However, we are of the opinion that Mr. Day, as mayor of the borough, is possessed of that interest in the premises, the leasing of which is the subject-

matter under consideration, that the lease itself comes within the interdiction of the statute. Contracts of this kind have received the condemnation of the legislature. *Sturr* v. *Elmer,* 75 *N. J. L.* 443, 444; 67 *Atl. Rep.* 1059. The statement of the Supreme Court in that case is singularly appropriate in this: "We may remark that the invalidity of such a contract in no way rests upon the criminal intent of the member of the council. The rule is one of policy, which, without regard to intention, inexorably reaches all contracts which contravene the purposes of the law" (at *p.* 446).

The lease of June 6th, 1933, therefore will be set aside.

(c) The prosecutor attacks another lease made by the borough council wherein land and premises of the municipality, called borough hall, were leased to the Berkeley Lumber and Supply Company. We are of the opinion that the attack on this lease fails. The statute provides that every municipality may lease any land or building of the municipality not presently needed for public use. *Cf. Pamph. L.* 1917, *ch.* 152, *art.* 18, § 10 (Home Rule act). It is true that the prosecutor urges that this particular building might be renovated and used for the purposes of the fire department. The record discloses that this could be done at a cost of approximately $8,000. There is nothing, however, by way of testimony or argument, that convinces us that the renovation of this property, and the using of it as suggested by the prosecutor, would be of advantage to the municipality, or, to put it another way, that this court should substitute its judgment in the regulation of the internal affairs of a municipality for the judgment of its elected officials, in the absence of a clear showing of irregularity or fraud or abuse of discretion, none of which appears in the record before us.

Further questions raised by the prosecutor require no further consideration.

The Groendyke lease will therefore be set aside.

The writ, in so far as it concerns the lease to the Berkeley Lumber and Supply Company, will be dismissed, and since the prosecutor is partly successful in this matter and partly unsuccessful, no costs will be allowed to either side.